**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **The United States of America,** | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **Case No. 3:06cv1405** |
| | : |
| **Anthony J. Palermino, et al.,** | : |
| **Defendants.** | : |

**RULING ON MOTIONS TO INTERVENE [DOCS. ## 12, 18]**

Plaintiff the United States of America ("USA") brought this action against defendant officials of the Connecticut Department of Public Utility Control ("DPUC") and various telecommunication carriers (collectively, "carriers"), seeking to enjoin the production by the carriers to the DPUC of information (if any) disclosed by the carriers to the USA. See Compl. [Doc. # 1].

This case arises, inter alia, as a result of an application filed by the American Civil Liberties Union of Connecticut ("ACLU-CT") in May 2006 against certain telecommunications carriers before the DPUC seeking an investigation of allegations of DPC rule and regulation violations and/or violations of state and/or federal laws/regulations committed by such carriers through disclosure to the federal government of the Customer Propriety Network Information of all of their customers, including called and calling numbers and the time and date of calls ("DPUC Action"). See id. ¶ 34. In August 2006, the ACLU-CT served interrogatories on the carriers involved in the DPUC

1

Action seeking information about their privacy policies,
disclosures to third parties since 2001, and information about
specific disclosures in response to government requests.  Id. ¶
35; First Set of Interrog. [Doc. # 1, Ex. C].  Subsequently, the
DPUC issued an order requiring the carrier defendants in that
proceeding to respond to the ACLU-CT's interrogatories, denying
those defendants' motions to strike the interrogatories.  Compl.
¶ 36.

The USA now "seeks to prevent the disclosure of highly
confidential and sensitive government information that the
defendant officers of the [DPUC] have sought to obtain, and
required the production of, from telecommunications carriers
without proper authorization from the United States," on the
basis that "[c]ompliance with the order, issued by those
officers, compelling responses to interrogatories would first
place the carriers in a position of having to confirm or deny the
existence of information that cannot be confirmed or denied
without causing exceptionally grave harm to national security.
And if particular carriers are indeed supplying foreign
intelligence information to the Federal Government, compliance
with the order would require disclosure of the details of that
activity."  Id. ¶ 1.

The USA brought this action against officers of the DPUC and
carriers only, and not against ACLU-CT or the Connecticut Office

of Consumer Counsel ("OCC"), both of which groups now seek to intervene in this action.  See ACLU-CT Mot. to Intervene [Doc. # 12]; OCC Mot. to Intervene [Doc. # 18].  The USA opposes these motions (and the defendant carriers join the opposition filed by the USA, see [Doc. # 23]), arguing that neither the ACLU-CT nor the OCC have a sufficient interest to warrant intervention and neither has rebutted the presumption of adequate representation by the DPUC defendants.  See Gov't Opp. [Doc. # 24/25].  For the reasons that follow, the motions to intervene will be granted.

## I.    STANDARD

Rule 24(a) provides for intervention as of right upon a timely filed motion "(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a).  As stated by the Second Circuit, "[t]o intervene as of right, a movant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the

3

action."  Brennan v. N.Y. City Bd. of Educ., 260 F.3d 123, 128-29

(2d Cir. 2001) (internal quotation omitted).  Under the second

prong of the test, for "an interest to be cognizable . . . it

must be direct, substantial, and legally protectable. . . . An

interest that is remote from the subject matter of the

proceeding, or that is contingent upon the occurrence of a

sequence of events before it becomes colorable, will not satisfy

the rule."  United States v. Peoples Benefit Life Ins. Co., 271

F.3d 411, 415 (2d Cir. 2001) (internal quotations omitted).  A

party seeking to intervene, however, need not have an independent

cause of action to be considered to have an interest within the

scope of Rule 24(a).  Forest Conserv. Council v. United States

Forest Serv., 66 F.3d 1489, 1493 (9th Cir. 1995) ("Whether an

applicant for intervention demonstrates sufficient interest in an

action is a practical, threshold inquiry.  No specific legal or

equitable interest need be established.") (internal quotations

omitted).  The party must show only an interest within the

context of the case and, as required by the third prong of the

test, demonstrate that its interest may be impaired by an adverse

decision in the case.  See Brennan, 260 F.3d at 132.  Under the

fourth prong, representation by an existing party is determined

to be adequate only if the party's "interests [are] so similar to

those of [the intervenor] that adequacy of representation [is]

assured."  Id. at 133 (emphasis added).  Accordingly, "[t]he

requirement of the Rule is satisfied if the applicant shows that

representation of his interest 'may be' inadequate; and the

burden of making that showing should be treated as minimal."

Trbovich v. United Mine Workers of America, 404 U.S. 528, 538

n.10 (1972).  However, "[w]hile the burden to demonstrate

inadequacy of representation is generally speaking 'minimal,' . .

. [the Second Circuit] ha[s] demanded a more rigorous showing of

inadequacy in cases where the putative intervenor and a named

party have the same ultimate objective.  Where there is an

identity of interest, . . . the movant to intervene must rebut

the presumption of adequate representation by the party already

in the action."  Butler, Fitzgerald & Potter v. Sequa Corp., 250

F.3d 171, 179 (2d Cir. 2001).

     "When considering a motion to intervene, the court 'must

accept as true the non-conclusory allegations of the motion.'"

Bay Casino, LLC v. M/V Royal Empress, 199 F.R.D. 464, 466

(E.D.N.Y. 1999) (quoting Reich v. ABC/York-Estes Corp., 64 F.3d

316, 321 (7th Cir. 1995). "A motion to intervene as a matter of

right, moreover, should not be dismissed unless it appears to a

certainty that the intervener is not entitled to relief under any

set of facts which could be proved under the complaint.  Each

intervention case is highly fact specific and tends to resist

comparison to prior cases."  Id. (internal quotations omitted).

**II.   DISCUSSION**

    A.   Timeliness

The USA and the defendant carriers do not dispute the timeliness of the motions to intervene, and as they were filed within a month of the commencement of this action and at the time no responsive pleading or motion to dismiss had yet been filed and no other substantive action had been taken, the Court finds this factor satisfied.

    B.   Interest in Action

As noted above, in order for an interest for purposes of Rule 24 intervention to be "cognizable," "it must be direct, substantial and legally protectable," rather than "remote [or] contingent on the occurrence of a sequence of events before it becomes colorable," Peoples Benefit Life Ins. Co., 271 F.3d at 415, although the party seeking to intervene need not have an independent cause of action.

Notwithstanding the USA's claim that "[t]he dispute in this case as to whether the State Defendants have th[e] authority [to require the carrier defendants to disclose information that the USA has precluded from disclosure] is between – and solely between – the State Defendants and the United States," Gov't Opp. at 4,[1] both the ACLU-CT and the OCC have an interest in the

---

[1] The Government further states: "the central issue in this case is whether the State [DPUC] Defendants have the authority to require the Carrier Defendants to disclose information that the

outcome of this action as such outcome will directly impact

(either positively or negatively) the DPUC Action and the

individuals on whose behalf the ACLU-CT and the OCC are

litigating in that proceeding.  The outcome of this action will

determine whether the DPUC's order requiring carriers to respond

to the ACLU-CT's interrogatories was proper and enforceable, thus

having a direct bearing on the outcome of the DPUC Action.[2]

Moreover, the OCC, as a statutorily mandated party to the DPUC

Action, see Conn. Gen. Stat. § 16-2a(a), also has a direct

outcome in the resolution of the legal issues present in this

suit: the OCC is charged with protecting Connecticut consumers in

connection with public service companies, electric suppliers and

certified telecommunications providers, and those consumers have

an interest in the outcome of the DPUC proceeding – relating to

the carriers' disclosure of their private telecommunications

---

Federal government has precluded from disclosure.  Any claimed
interest of ACLU-CT's or OCC's to pursue the state proceedings is
therefore derivative of, and contingent upon, whether the State
Defendants have authority to continue these proceedings."  Id.

     [2] See In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991)
(Sierra Club had an interest in "the transaction which [wa]s the
subject of the action" where Sierra club was "a party to the
administrative permitting proceedings where Regulation 61-99
[wa]s involved," the suit in which Sierra Club sought to
intervene arose "out of the permit proceedings and the complaint
sought to enjoin the defendants from applying [Regulation 61-99]
[and] as a practical matter, enjoining certain sections of
Regulation 61-99 in the district court [would] impede Sierra
Club's ability to protect its interest in the administrative
proceeding").

activity to the federal government – and thus of this action.

Accordingly, the Court finds this element satisfied.

### C.   Impairment of Interest

For the reasons described in the preceding paragraph,

because a determination for the USA in this action will directly

impact the DPUC proceeding and the interests the ACLU-CT and the

OCC represent there, an impairment of interest if intervention is

not granted has been shown.

### D.   Inadequate Protection/Representation

The USA claims that adequacy of representation by the DPUC

defendants is assumed, that those defendants share the same

objective as the ACLU-CT and the OCC, and that the presumption of

adequacy has not been rebutted.  Gov't Opp. at 4-5 (citing United

States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 984-85

(2d Cir. 1984); Butler, 250 F.3d at 179; Mrs. W. v. Tirozzi, 124

F.R.D. 43, 44 (D. Conn. 1989) ("[P]laintiff must overcome

presumption of adequate representation that arises when an

application has the same ultimate objective as the original

parties.")).  Specifically, the USA argues that "the State [DPUC]

Defendants – which have indicated that they will defend this

lawsuit – have the same 'ultimate objective' as the ACLU-CT,

i.e., a determination that the State Defendants do have the

authority to order disclosure of the information ACLU-CT seeks in

the administrative state proceedings.  Indeed the United States

8

was forced to bring this action precisely because the State

Defendants believe they have that authority."  Id. at 5.

     While the USA is correct that, as discussed above, as a

general matter the Second Circuit "has demanded a more rigorous

showing [than minimal] of inadequacy in cases where the putative

intervenor and a named party have the same ultimate objective,"

Butler, 250 F.3d at 179, and where "a group (or groups) with

recognized interests wishes to intervene and defend an action of

the government which the government itself is defending . . .

courts tend to assume, in the absence of evidence to the

contrary, 'that the government will adequately defend its

actions, at least where its interests appear to be aligned with

those of the proposed intervenor,'" Schaghticoke Tribal Nation v.

Norton, 06cv81 (PCD), 2006 WL 1752384, at *5 (D. Conn. June 26,

2006) (citing Me. v. Dir., United States Fish & Wildlife Serv.,

262 F.3d 13, 19 (1st Cir. 2001)), that presumption is not

operative to bar intervention in this case.  While the DPUC

defendants will presumably vigorously defend their interests in

this action, and thus the DPUC's authority to compel the carriers

to respond to the ACLU-CT's interrogatories, their objectives and

those of the ACLU-CT and the OCC, and the individuals/consumers

those groups represent, may diverge as their interests do differ

– while the DPUC is a neutral state-established adjudicative body

seeking to clarify the outer boundaries of its authority and to

exercise such authority accordingly, the ACLU-CT and the OCC seek

to protect individuals and consumers generally from any improper

disclosure of their personal telecommunications activities.  Cf.,

e.g., In re Sierra Club, 945 F.2d 776, 780 (4th Cir. 1991)

(holding that the South Carolina Department of Health and

Environmental Control ("DHEC") would not adequately represent

Sierra Club's interests in action where Sierra Club represented

"only a subset of citizens concerned with hazardous waste" and

"d[id] not need to consider the interests of all South Carolina

citizens [or] to consider its position vis-a-vis the national

union," where the DHEC did, noting "[a]lthough the interests of

Sierra Club and South Carolina DHEC may converge at the point of

arguing that Regulation 61-99 does not violate the Commerce

Clause, the interests may diverge at [other] points").  Moreover,

although the USA seeks to gloss over an important distinction

between defendants and the movants here in order to analogize

this case to United States v. Hooker Chems. & Plastics Corp., 749

F.2d 968, 984 (2d Cir. 1984), by referring to the DPUC defendants

in this action as the "State Defendants," this case is

distinguishable from the facts of Hooker, because in that case

the governmental entity claimed to adequately represent the

interests of the intervenor was suing on behalf of its citizens

in a parens patriae capacity, whereas here the "State Defendants"

are sued in their capacity as officials of the neutral

adjudicatory body, DPUC, and thus do not represent the interests

of private individuals/telecommunications consumers championed by

the ACLU-CT and the OCC.  Indeed, as the OCC observes, if DPUC

and its officers were capable of adequately representing the

consumers represented by OCC, there would have been no reason for

the Connecticut legislature to establish the OCC and designate it

as a party to all disputed cases before DPUC.

Accordingly, the Court finds that the intervenors have

satisfied the fourth factor of potential inadequacy of

representation.

## III. CONCLUSION

For the foregoing reasons, both motions to intervene [Docs.

# 12, 18] are GRANTED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 8th day of November, 2006.**